UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-00344-MOC-DSC

| | | |
|---|---|---|
| **ERIN POTTS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **ADP, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on defendant's Motion for Summary Judgment. Having considered defendant's motion, plaintiff's response, and defendant's reply, and having heard oral arguments, the court will grant defendant's motion and dismiss this action.

**FINDINGS and CONCLUSIONS**

**I.    Background**

In this action, Erin Potts ("plaintiff") asserts claims against her former employer ADP, Inc. ("defendant") for disparate discipline and failure to promote based on gender, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. Specifically, plaintiff contends that defendant violated Title VII by "failing to promote plaintiff to a position for which she was qualified;" "interfering with plaintiff's promotional opportunities;" and "imposing upon plaintiff unjust disciplinary action" when it issued her a performance improvement plan and verbal and written counseling. Defendant contends that it is entitled to summary judgment because plaintiff cannot make out a *prima facie* case as to either claim.

1

## II. Summary Facts Relevant to Plaintiff's Claims

Defendant is in the business of providing payroll and HR services to businesses nationwide. Plaintiff was hired in June 2005 as a sales trainee in defendant's sales department, understanding that she could serve as a trainee for as long as a year; however, defendant promoted her to the position of "Up-Market Client District Manager" in less than five months. It is undisputed that defendant selected plaintiff for this position over two male candidates. In that position, plaintiff was responsible for selling defendant's services to existing clients, but was not responsible for developing new clients.

At the beginning of every fiscal year, defendant establishes a sales plan setting a sales quota for each district manager. As the year progresses, each manager's sales are measured against the plan on a monthly basis. In addition to monthly review, defendant sets weekly goals for each district manager to remain on target to meet their annual sales goal. Plaintiff understood that her success with defendant depended on meeting her plan each year. It is undisputed that plaintiff met and exceeded her plan in 2006 and 2007, but only achieved 72% of her plan in 2008. Plaintiff testified that throughout this period, she frequently met with her male supervisors, Ken Schmidt and David Trott, but never perceived that she was being treated differently than her male counterparts because of her gender

Despite not meeting her plan in 2008, Trott offered plaintiff a promotion at the beginning of FY 2009 to "Up Market Hunter District Manager." Unlike the previous position, the promotion required plaintiff to develop her own clients rather than service pre-existing accounts. Plaintiff accepted the promotion and Trott became plaintiff's direct supervisor. Trott evaluated each manager's performance based on "lagging" indicators, or past sales performance, and "leading" indicators, or the prospecting activity for new business. "Leading" indicators include a

manager's activities in increasing the sales funnel, presence in the office, and participation in group meetings.

Up to the fourth quarter of FY 2010, plaintiff performed satisfactorily, meeting her plan in 2009 and 2010. In Q4 2010, Trott began having concerns for plaintiff's sales efforts. While plaintiff finished 2010 above plan, trot determined that the majority of the work that led to that result was done earlier in 2010. Viewed quarterly, Trott determined that plaintiff realized only 37% of her fourth quarter expectations. As a result of that determination, Trott began to verbally coach plaintiff, warning her that a slow end to fiscal year 2010 could translate into a slow start to the beginning of fiscal year 2011. Despite coaching, plaintiff missed expectations in FY 2011. In September FY 2011, plaintiff achieved 22% of plan and in October 2010 plaintiff was -4% of plan. Trott determined that plaintiff was not performing the sales activity necessary to stock her business pipeline

Despite below plan performance in September and October FY 2011, plaintiff applied in October FY 2011 plaintiff applied for a "Sales Competitive Manager" position. It is undisputed that Trott helped plaintiff prepare for the interview and provided her with the necessary endorsement for the role. Ken Powell ("Powell"), then Sales Effectiveness Director, interviewed plaintiff for the position. At the time of the interview, Powell supervised six manager employees, half of whom were women. Powell averred that in interviewing the candidates for the position, he considered the candidates' performance in the interview, their ability to articulate a 30-60-90 day plan for the position, their work performance to date, and history and feedback from their current manager if they were a current ADP employee.

Powell interviewed three ADP employees for the position, two males and plaintiff. In November 2010, Powell offered the positions to the male candidates, who Powell avers were

3

both better qualified and performing their current roles well when compared with plaintiff. It is undisputed that Powell was the ultimate decision maker and that he avers that he did not base his decision on gender, but on qualifications and the interview process. Powell informed plaintiff of his decision not to promote her to the position on November 29, 2010. Plaintiff testified that at the time she was told she would not receive the promotion she did not feel that anyone had treated her differently in any respect due to her gender.

After unsuccessfully applying for the promotion, plaintiff's performance continued to lag behind. In November of FY 2011, plaintiff achieved 10% of plan and as of December FY 2011, despite being halfway through FY 2011, plaintiff was at 0% of her annual plan. Plaintiff made no new sales in December FY 2011. Trott discussed with plaintiff his concern of an inadequate sales pipeline and set forth in the warning a number of goals and expectations plaintiff would be required to meet over the following months. Further, the PIP summarized Trott's concerns, goals, and expectations for plaintiff in the months that were to follow

It is undisputed that plaintiff's performance lagged behind her peers. In December FY 2011, the other two female members on Trott's team outpaced plaintiff's sales efforts. The male members of his team, while also under plan, they were not close to plaintiff's lagging indicator of 0% of sales for the year. It is undisputed that plaintiff was, mid FY 2011, the worst performer on Trott's team.

In the second half of FY 2011, plaintiff admittedly did not meet the expectations set forth in her PIP.

While still on the PIP and below plan, plaintiff applied for a Sales Executive position in March 2011. Even though the time for applying had closed, plaintiff was allowed to apply.

Plaintiff was interviewed on April 1, 2011, but was not selected for the position, which was filled by another female candidate.

On April 4, 2011, Trott issued plaintiff a Written Warning, as to which he contemporaneously made notes concerning the reasons for the warning. The warning listed the areas for improvement, but plaintiff refused to sign the warning. After such refusal, e-mailed Trott and stated that she refused to sign the Written Warning due to her pending EEOC charge. Trott testified that he had no recollection of ever receiving notice of the EEOC Charge until plaintiff informed him via her post-warning e-mail. After filing her EEOC charge and receiving a written warning, plaintiff took medical leave starting April 14, 2011. She remained out of work until resigning January 23, 2012.

### III. Summary Judgment Standard

Defendant has moved for summary judgment and supported that motion with transcripts of depositions, affidavits, and other evidentiary materials. Rule 56(a), Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures for plaintiff to use in responding to a Motion for Summary Judgment:

> **(c) Procedures.**
> (**1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

> purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56 (1986)). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under

governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

**IV. Discussion**

**A. Claims for Failure to Promote Based on Gender**

In a failure to promote case, to satisfy the burden of demonstrating a *prima facie* case of gender discrimination, plaintiff must show that: "(1) plaintiff is a member of a protected group; (2) plaintiff applied for the position in question; (3) plaintiff was qualified for the position; and (4) plaintiff was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." Carter v. Ball, 33 F.3d 450, 458 (4th Cir.1994) (quoting McNairn v. Sullivan, 929 F.2d 974, 977 (4th Cir.1991)). If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to show that there were legitimate, non-discriminatory reasons

7

for the employment decisions it made. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). If an employer satisfies that requirement, the burden then shifts back to plaintiff to show that the employer's proffered reasons are false and a pretext to conceal intentional unlawful discrimination. Id. Plaintiff's claims fail on the third and fourth elements.

As to the April 2011 "Sales Executive" position, not only was plaintiff not the most qualified candidate, the position was offered to a woman. Thus, under no circumstances could her non-selection for that position be the foundation for a claim of failure-to-promote based on gender discrimination. Johnson v. Nordstrom, Inc., 260 F.3d 727, 732 (7th Cir.2001), cert. denied, 535 U.S. 928 (2002).

As to the October 2010 "Sales Competitive" positions, plaintiff has presented no evidence (beyond her own speculation) that would support a finding that gender played any role in defendant's decision not to promote her to one of these positions. The undisputed evidence is that Powell, the sole decision maker, based his decision on objective performance-based criteria. Indeed, the overwhelming evidence is that Powell hired the successful male candidates based on their ability to articulate a 30-60-90 day plan for the position, their work performance, and history and feedback from their current manager, all non-discriminatory reasons. Even if the court were to put aside Powell's affidavit, plaintiff has not shown that she was equally or more qualified than the successful candidates for the positions. Indeed, at the time she applied for the position, plaintiff's job performance was deemed to be poor by her direct supervisor. "In a failure to promote case, the plaintiff must establish that she was the better qualified candidate for the position sought." Evans v. Technologies Applications & Service, Co., 80 F.3d 954, 960 (4th Cir.1994). Plaintiff's speculation and conjecture raises only a mere possibility of gender discrimination rather than the reasonable probability which is necessary to support an inference

of unlawful motivation. Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241–42 (4th Cir. 1982). Speculative assertions that a defendant's real motivation was unlawful is not enough to withstand summary judgment, Goldberg v. B. Green and Co., 836 F.2d 845, 848 (4th Cir.1988), and conclusory statements will not satisfy a plaintiff's burden in responding to the motion for summary judgment. Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211 (4th Cir.1987). Plaintiff has not presented any evidence which could satisfy such burden of proof as to the third element of a *prima facie* claim as to the "Sales Competitive" positions. Indeed, plaintiff never deposed Powell, making his averments as to the reasons he chose the other candidates over plaintiff uncontested.

### B. Claims for Disparate Discipline Based on Gender

Plaintiff's claim for disparate discipline are based on the January 3, 2011, PIP and verbal warning and the April 11, 2011, written warning. To establish a *prima facie* case of racial discrimination in the enforcement of employee disciplinary measures under Title VII, the plaintiff must show: (1) that she is a member of the class protected by Title VII, (2) that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against her were more severe than those enforced against those other employees. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir.1993). As plaintiff contends that the disparate disciplinary treatment was based on gender, plaintiff must now come forward with evidence that defendant treated similarly situated male employees differently, to wit, that defendant failed to discipline male employees with similar performance issues.

Plaintiff's claim, however, suffers from a threshold concern, which is that the disciplinary action taken is not sufficiently substantial to amount to "adverse employment action." Plaintiff

9

does not allege that such warnings or PIP resulted in any decrease in pay or benefits, discharge, demotion, loss of job title, or supervisory responsibility; instead, plaintiff contends that by receiving such warnings and PIP, she was disqualified from seeking promotions. The evidence does not support such argument as not only was plaintiff allowed to compete for promotions, defendant made exceptions for plaintiff to apply for a position that had already closed. Spears v. Missouri Dept. of Corr. & Human Res., 210 F.3d 850, 854 (8th Cir. 2000) ("A poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment ... [and] is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.").

Even if the court were to assume that the warnings and PIP amounted to adverse employment actions, plaintiff has not satisfied her burden of coming forward with some evidence that the disciplinary measures enforced against her were more severe than those enforced against other similarly situated male employees. Plaintiff's claim fails on the third element of a *prima facie* case as she has not identified any male employees who were treated more favorably. Indeed, the undisputed evidence shows that plaintiff was the worst performing employee in Trott's group. It is equally undisputed that Trott both hired plaintiff and later promoted her to the "Up-Market Hunter" position, which raises an inference under Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991) that Trott's motivation for issuing the disputed discipline was non-discriminatory.

Unable to show an adverse employment action, present evidence of motivation based on discriminatory animus, or that similarly situated male employees were treated more favorably, the court will dismiss plaintiff's claim of disparate discipline.

### C. Claim of Retaliation

Plaintiff contends that the April 4, 2011, written warning was issued in retaliation for her filing a claim of discrimination with the EEOC on March 7, 2011, as well as making internal complaints of discrimination. To make a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) the protected activity was causally connected to the employer's adverse action. Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir.2004). The causal connection in the third-element of a Title VII retaliation claim is the "but-for" cause provided in traditional tort law, not the "motivating factor" standard applicable to other Title VII claims. Univ. of Texas Sw. Med. Ctr. v. Nassar, ___ U.S.___, ___, 133 S. Ct. 2517, 2534 (2013). On summary judgment, plaintiff's burden is to come forward with evidence that but for engaging in protected activity, she would not have been disciplined.

While plaintiff clearly engaged in protected activity when she complained internally and filed a charge with the EEOC, her claim fails as to the second element because the warnings and PIP do not amount to "adverse employment actions" for the reasons discussed above. Even if such actions did satisfy the second element, plaintiff has not come forward with any evidence upon which a jury could determine that but for engaging in these protected activities, plaintiff would not have received the warnings or the PIP. While plaintiff has shown close-temporal proximity of the protected activity to the complained-of disciplinary action, see King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003), which could well satisfy the *prima facie* requirement in certain circumstances, id., plaintiff has come forward with no evidence to refute Trott's averment that he was unaware of the charge at the time he issued the warnings. Indeed, the evidence is unrefuted that plaintiff's performance issues, and Trott's recognition of those

11

problems, substantially predated her participation in protected activity. Even assuming that Trott was aware of the protected activity, it would strain the bounds of logic to find that protected activity was the but-for cause of the disciplinary action as defendant thoroughly documented plaintiff's poor performance, its reasons for issuing the discipline, and a plan that was clearly in furtherance of improving job performance. Indeed, the only evidence of a "but-for" cause is plaintiff's job performance: "but-for" her poor performance, the discipline would never have issued.

### D. New-Found Claims

For the first time, plaintiff has raised claims in her Response for constructive discharge under the Americans with Disabilities Act and a claim that her non-selection for the "Sales Executive" position was in retaliation for engaging in protected activity. The court has closely review plaintiff's charge of discrimination (Def. Ex. K.) filed with the EEOC and can find no semblance of any such allegations in the administrative complaint.

"Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir.2002). The scope of the EEOC charge defines the scope of any ensuing lawsuit. Id. The Fourth Circuit has held that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans, 80 F.3d at 963. A fair reading of plaintiff's charge of discrimination does not disclose that she ever raised these claims administratively. Further, there is no evidence in the Complaint or in the discovery that plaintiff had any basis to believe that she was constructively discharged based on her alleged disability. Indeed, the only reference in the record appears to be

to the settlement of a worker's compensation claim, wherein plaintiff agreed to hold defendant harmless on her claim that her bipolar disease was a work-related injury. As to her claim that she did not get the "Sales Executive" in retaliation for engaging in protected activity, plaintiff never raised that concern in her charge, which was pending at the time she was not offered the job, and such is not mentioned in the Complaint filed herein.

Because plaintiff failed to exhaust her administrative remedies as to any ADA claim and on any claim that she was not offered the "Sales Executive" job in retaliation for engaging in protected activities, the court lacks jurisdiction over those claims. Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir.2005)("[T]he plaintiff's claim generally will be barred if his charge alleges discrimination on one basis-such as race-and he introduces another basis in formal litigation-such as sex."). Even if this court were to go the next step and consider plaintiff's substantive allegations, she has presented no evidence that would support an ADA claim as she has pointed to no accommodation that she asked for or was denied and she has presented no colorable evidence that Powell took any adverse action against her in retaliation for engaging in protected activity. As mentioned above, plaintiff never took Powell's deposition, making her claims as to a retaliatory motive pure speculation.


**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Summary Judgment (#48) is **GRANTED**, and this action **is DISMISSED WITH PREJUDICE**.


Signed: September 16, 2014

Max O. Cogburn Jr.